Counsel? Good morning. My name is Vicki Buchanan. I'm here on behalf of Richard Pirtle. In this case, we know we have a bad, tainted ID. You're bad. So, the next question. You have a what, I'm sorry? A tainted identification. In this case, the eyewitnesses, the victims of the robbery, did not know, picked out the wrong person in the lineup, and then they came back to the police officers and said, we think we may have picked the wrong person, and the police officers said yes. You said they and we. Wasn't it one victim? They both misidentified. Both in the photo ID. One did five and one did six. I know, but in terms of calling back, was it one or both? It was one, as Mr. Esponza called back. But then he talked to Ms. Ramirez and said we goofed up, and then Mr. Connolly confirmed that, yes, indeed, it was number one. You know, when you read the record of this, you get the impression that the jury did not necessarily rely upon the victim ID because of their request for information about the clothing and that sort of thing? Well, they may not have, or else they may have asked for that as, you know, to corroborate what is being said by the, you know, what was the, the people who were inside the bank certainly looked a lot different by the definition of who Officer Steyer saw come out of the bank. And so I don't know exactly what the jury was looking for, but they could have been looking for the, you know, the initial, they were looking for the initial police report that went over the air. What's the first point that you'd like to make? The first point is, well, it's apparently, I think this case has to do with prejudice, and that's the only thing that's involved here. The district court in the habeas case went through and looked at the. You mean in terms of representation by counsel, prejudice from deciding to allow that in? In the due process portion of whether or not he was deprived due process by the tainted. Whether there was any substantial and injurious effect from the admission of. Very interestingly, counsel decided, hey, this is a case where I'm going to use mistaken identity. That's not completely off the edge of the world. And gosh, this is an amazing instance, because I actually will be able to introduce evidence of mistaken identity. I'll let this come in, and I'll say, see what happens? And why is that a bad tactic, first of all? Well, it's a bad tactic when you're allowing the witness to get up there, the victim of robbery, to say, Mr. Pirtle put a gun to my head, or Mr. Pirtle took me into the bathroom and told me to lie down. You're calling him Mr. Pirtle. If you had gone in and done a motion to suppress, and they come back and said, you cannot, you can testify about the man in the blue mask, and you can testify about the man in the red mask, but you cannot call them Mr. Pirtle and Mr. Torres unless you have specifically identified them. Throughout the entire record, they are now referred to as, by police officers, as Mr. Pirtle running through the neighborhood, Mr. Pirtle coming out of the house, by people who don't really know that that was Mr. Pirtle at the time. So it was that, when I was trying to think of maybe the logical reason why the attorney would do that, I just can't think of any reason why you would want to have victims of something that was a pretty bad crime up there saying, Mr. Pirtle did this to me. Was he, did he argue that the police polluted all of this by telling the witnesses who the defendant was when they were mistaken? Did the defense counsel? Yeah. No. He basically said, he argued, he brought in evidence about the tainted lineup. Right. But I don't think a jury can really perceive that. And I was having trouble with this myself, and I decided, you know, go through all the evidence and just substitute red mask for blue, red mask for every talk, every mention of Torres. And red mask, I mean, blue mask for every talk, mention of Pirtle. And read the record that way. And you come up with sort of one of these logic problems you get on the SAT, where you've got four guys with four hats and four careers, and they, some do this and some do that. You have to come up with some sort of a logic matrix to decide whether you can actually have Mr. Pirtle be involved. The arrest. Go ahead. I'm sorry. But these people were masked. Isn't that right? I'm sorry? Yes. They had masks on. Yes, the robbers had masks. That's why the identification is not from looking face-to-face. It was an identification where they only saw the eyes. Except for possibly Mr. Torres. They said that they could see his facial features through the, it was a nylon stocking, the red mask was a nylon stocking. But as far as my client is concerned, all they could see was the eyes. That was all that was exposed. Let us suppose that that's the way this trial had actually happened. Red mask, blue mask. And in that, that the jury in the deliberation room said, you know, I don't, said to themselves, we don't think it's fair to consider the victim ID. Let's just assume the person was masked and they couldn't tell who it was. Now let's look at the evidence. The police were on this scene, the arresting officers were on this scene pretty quickly, weren't they? Yes, they were. And they chased what they thought was a suspect wearing a particular set of clothing. Do I have that right? Yes. What I've identified through all of the identifications, there were four, I think there were four different officers who were immediately on the scene. I think there were others looking for evidence. And he was chased, there was a chase and leaping over walls and clothing shed. And then eventually Mr. Pirtle was found in a home where the occupant said he had burst in and he was sweating and he had some of the clothing still on. Yes, according to one description. Now there are lots of different descriptions when we look at the police, plus Mr. Holloway, who was with, I think, the phone company. We have dark clothes, somebody in all in black out near the corner. Officer Stiers is the first one I saw him come out. And he's pretty specific when he's talking about clothing and shoes. But he's 30 feet away, I mean 30 yards away, identifying a red logo on a pair of tennis shoes. Did he have a red logo on tennis shoes when he was caught? When he was arrested, he did. I did exactly what Judge Hawkins is suggesting. I decided these are bad identifications. It might have been a smart tactic not even to use these somehow, one way or the other. But if you take all that and set it aside and look at the identification links that Judge Hawkins has suggested, I mean it seems to me pretty clear that this is the guy. So what's the prejudice is the question. Well, the prejudice is, unlike the cases cited by the government in this, by the state of California in this particular case, there is nothing that actually directly ties my client to the fruits of the crime. Unlike the other cases where the one man had the dye packet had exploded on him and he had dye all over himself. Or someone else in an identity case where he had the actual stolen property in his possession. It's like Hansel and Gretel. There's a bunch of breadcrumbs leading right to this guy. They're breadcrumbs that should have had fingerprints on them. Well, should have, could have, would have. I can't tell you how many cases I had where there weren't fingerprints on guns that people admitted they'd had in their hands. Okay, the one thing that we do know for sure, I mean, we don't know from the testimony who took the tape, the cassette. We don't know who took the cash bag. We don't know between Torrance, between Blue Mask and Red Mask, who took it. And we also don't know who took the wallets and the personal property from the victim. Do we have to break it down that specifically? Well, the one thing that we do know, and this is what I think is critical, is we do know that the person in the Blue Mask took $300. And we have no connection whatsoever with Mr. Pirtle and the $300 that we know that the person with the Blue Mask took because the $300 was never found. So I think that there is enough to have substantial and injurious effect on the jury when they're actually told the names of the people. Okay. You have about two minutes. Do you want to save it? Yes, thank you. Thanks for coming in today. We'll hear from the State at this time. Mr. Lee. Good morning, Your Honors. Deputy Attorney General Joseph Lee on behalf of the Board. This is a case where the error in admitting the identification evidence was clearly harmless. Here we have an essentially unbroken chain of police officer eyewitness testimony establishing that Petitioner was the robber who wore a large and heavy black jacket, maroon pants, and white tennis shoes. As this Court mentioned, as he fled, he shed. He dropped his handgun, which was recovered. He dropped the money bag containing the exact amount that was missing, which was recovered. He shed his black jacket, which was recovered. He tried to break into a house where the occupant of the house pointed to him and said, He's not supposed to be here. He broke into my house. He's there sweating. He's arrested. He's identified by all these police officers as the person. I would like to point out that Officer Stiers did respond to a robbery in progress call, so he did observe the two black men come out of the check cashing store, and the victims only described two robbers being there. So any error in this case is clearly harmless. Was just as a matter of curiosity, was Blue Mask apprehended? The other co-defendant, there is no issue as to his identification as the robber because he was chased by Officer Stiers and actually shot. Okay. And so also when the jury is asking for a readback of descriptions of clothings and stuff, this demonstrates that they didn't determine that Petitioner was the robber based on the victim's identifications of him. Anything else you want to offer? I have a couple questions. Sure. The two victims misidentified Pertle at the lineup. Is that right? That's correct. And then how did those lineup identifications get into evidence in this case? I believe the whole lineup procedure, there was testimony as to the lineup procedure and who they identified, and then the fact that Esparza came back and said, oh, it was actually number one, wasn't it? And Detective Comey said, yes, it was. Subsequent to that, both victims positively identified Petitioner at the preliminary hearing and at trial. So did the prosecutor put in the evidence of the lineup? Was the actual photo spread in evidence? That I'm not certain of. But the fact that they did misidentify, that they did not identify Petitioner's photograph originally was in evidence. Through testimony? Through testimony. From which side? Through defense testimony. Not from the prosecution? I don't believe so. However, going to the ineffective assistance of counsel claim, I think it was reasonable for trial counsel under the circumstances, because it was a defensive mistake in identity, to introduce the fact that there was a suggestive ID, that the detective did point out that, yes, you did misidentify this. The correct person is number one. I'm trying to get clear in my own mind precisely how this happened. In other words, the prosecution only put in the eyewitness identification, not the photograph problem that had gone on before? In other words, the prosecutor said, okay, you see anybody in the courtroom that stuck the gun in your face at the bank? Yeah, that guy right there. Is that what happened? And then the defense said, wait a second, didn't you go to a lineup earlier and pick the wrong person? Is that the way it happened? I believe that's the way it happened. You don't seem sure. Did you read the file and you don't know how this went down? I did review the file. I'm honestly not certain, but in this case it doesn't matter. Because when I read the habeas petition, you know, the order that was filed by Vogel, Hastings, and Curry, it isn't really clear exactly what happened. They say any objection to the in-court identification evidence would have been overruled. It's very murky as to precisely how this went down. Your Honor, in this case, whatever way it went down, it doesn't matter. And what trial counsel did here was reasonable, I believe, because the tactic here, if you look at his closing argument, was to sort of deftly raise the specter of police misconduct and a police conspiracy. Well, here the victims don't identify Petitioner. Then detective says, well, it was Petitioner. Then they identify Petitioner. And, well, lo and behold, look, the only witnesses who you have here who are identifying Petitioner as the robber are police officers. So I think that was a reasonable tactic under the circumstance. And even assuming it wasn't, Petitioner wasn't prejudiced for the same reasons that I articulated, that the error in identifying, in admitting the identification error evidence was harmless. Under the ADPA, what is the effect of the California courts saying, in effect, that this was harmless error? Or I think what they said was the jury had plenty of other evidence to convict. Well, I'm not going to. Are we intending to make our own finding as to whether or not this misidentification was prejudiced? I believe you'd be reviewing that determination de novo. De novo.  Yes, Your Honor. And unless this Court has any further questions, I'd be prepared to submit. I don't see any. Thank you for coming in today. You have about two minutes, counsel, for rebuttal. Can you answer Judge Trott's question? Yes, I can. Good for you. At the trial, on page 163 of the excerpts of record, 164, Ms. Ramirez is asked this is just the very beginning of her testimony. By the prosecutor? By the prosecutor, yes. Did you see these two individuals? And she says, yes. What did you see? I saw a gun. Both of them had guns. Okay, yes. Do you see those persons here in court today? Yes, I do. I need to describe what they're wearing. And then she goes through, and then they indicate to Mr. Torrence and to Mr. Purtle. So it was asked directly. All right. Then how did the photo identification get in? It came into the defense by, you know, interrogating these witnesses as to their photo. Was the actual photo spread in evidence? I don't know. Okay. I don't know. I know that they talked about identifying picture five and picture six, and picture one was the one that was Mr. Purtle. And your point is counsel should have tried to suppress that identification based on the photo lineup rather than allowing it to go in and then trying to undercut it by showing you don't know what you're talking about. You got the wrong people right off the box. And then the police are the ones that plant it into your head. So the police are up to no good. Sure. I was defense counsel. That's what I'd be doing. And then if the motion to suppress isn't granted, then you go with the alternative. Okay. Thank you. Case to start. You will be submitted for decision. The Court's going to take a brief recess before we pick up the next case, which is United States v. Alvarado-Martinez. If counsel will come forward and be prepared to begin, we'll be back and we'll be back shortly.
judges: Trott, Hawkins, Bright